IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| ANN M. KIRBY, | ) | Civil Action No. 3:04-22073-TLW-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On March 11, 2002, Plaintiff applied for DIB. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held April 10, 2003, at which Plaintiff appeared and testified, the ALJ issued a decision dated August 25, 2003, denying benefits and finding that Plaintiff was not disabled on or before December 31, 2002, her date last insured. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was forty-eight years old at the date she was last insured. She has a high school education and past relevant work as a bookkeeper/manager and salesperson. Plaintiff alleges

disability since June 12, 2001, due to back surgery, resulting in an inability to sit, stand, or walk for any length of time and back and shoulder pain.

The ALJ found (Tr. 21-22):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2002.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart F, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not fully credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

7. The claimant has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently. She can only perform unskilled work and needs a sit/stand option. She is unable to crawl, crouch, climb, squat or kneel and can not use her upper extremities for pushing or pulling.

8. The claimant is unable to perform any of her past relevant work (20 CFR § 404.1565).

9. The claimant is a "younger individual between the ages of 45 and 49" (20 CFR § 404.1563).

10. The claimant has a "high school education" (20 CFR § 404.1564).

11. Transferability of skills is not an issue in this case (20 CFR § 404.1568).

12. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

13. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, and based on the testimony of the vocational expert, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as storage facility clerk, carton packer and parking lot attendant. There are 485[;] 11,580[;] and 650 of these jobs in the state economy of South Carolina, respectively. There are 227,000[;] 575,000[;] and 116,000 in the national economy.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

On July 9, 2004, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on September 1, 2004.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389 (1971) and <u>Blalock v. Richardson</u>, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than twelve months…." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff alleges that: (1) the ALJ's decision is not supported by substantial evidence; (2) the ALJ erred in failing to accept her treating physician's opinion of disability; (3) the ALJ erred in evaluating her credibility; (4) the Appeals Council failed to consider medical information submitted to it; and (5) new evidence submitted to this Court supports her allegations of disability.

A. Substantial Evidence

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence. The Commissioner argues that substantial evidence supports the ALJ's decision that Plaintiff was not disabled on or prior to December 31, 2002, her date last insured.

Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's decision is supported by substantial evidence including medical records of treating and examining physicians and objective medical testing. In June 2000, Plaintiff sustained injuries in an automobile accident. She was conservatively treated by a chiropractor from June to August 2000. Tr 98-117. On August 22, 2000, Plaintiff was examined by Dr. Jeffrey Wilkins of

the Coastal Orthopaedic Associates for lower back and right hip pain. Dr. Wilkins assessed mechanical low back pain and sacroiliac facet. Tr. 258-259.[1] Dr. William Naso, a neurosurgeon, treated Plaintiff from September 2000 to February 2001. Tr. 119-125. Plaintiff was treated at Kingstree Family Medicine from August 2000 to September 2001 for low back pain, hypertension, anxiety, and depression. Tr. 127-128, 148-155.

Dr. Steven C. Poletti, an orthopaedic surgeon at the Carolina Spine Institute, treated Plaintiff from March 2001 to September 2002. Tr. 180-184, 223-238. On June 11, 2001, Dr. Poletti performed a laminectomy and discectomy at L4-5 and L5-S1; posterior lumbar interbody fusion at L4-5, L5-S1; lateral transverse process fusion at L4-5, L5-S1; a bone graft on her left posterior iliac crest; segmental fixation using pedicle screw instrumentation at L5-S1; and shaping of the structural allograft at L4-5 and L5-S1. Tr. 143-144. On September 6, 2001, Dr. Poletti noted that Plaintiff's fusion was solidly incorporated and that she managed her neck and arm pain well with pain medication. Tr. 235. X-rays in October 2001 showed that Plaintiff's fusion mass was extremely well healed. Tr. 234. On December 17, 2001, Plaintiff reported to Dr. Poletti that she continued to experience significant back, buttock, and hip pain, but her leg pain felt much better than it did preoperatively. Dr. Poletti noted that the interbody bone at the surgical site looked good and the screws were not loose. Tr. 233. On March 18, 2002, Plaintiff told Dr. Poletti that she continued to have significant pain, but she received some measure of relief from Dilaudid. He advised against surgical intervention and noted that x-rays of her lower back looked reasonably good, her leg pain was improved, and her fusion was solidly healed. Dr. Poletti

---

[1]These records were not submitted until two months after the ALJ's final decision.

instructed Plaintiff to follow-up with him in four to six months. Tr. 228. On September 26, 2002, Plaintiff complained to Dr. Poletti of low back, buttock, hip, and leg pain. He noted that Plaintiff's x-rays and interbody fusion looked good. Tr. 225.

On November 12, 2001, Plaintiff was treated at the Grand Strand Regional Medical Center for complaints of elevated blood pressure, blurred vision, and tinnitus. Tr. 159-162. Plaintiff had a regular heart rate and rhythm; had no extremity clubbing, cyanosis or edema; was alert and oriented; and had intact cranial nerves, full strength, and normal gait. Tr. 159. A chest x-ray did not indicate any active lung disease. Tr. 174. Dr. Mary Colfer diagnosed uncontrolled blood pressure and back pain, and administered medicine which reduced Plaintiff's blood pressure and back pain. Plaintiff's previously prescribed medications were adjusted by Dr. Colfer. Tr. 159-160.

Plaintiff was treated at the Myrtle Beach Family Medicine clinic from November 2001 to March 2002, primarily for hypertension. Tr. 185-194. A chest x-ray on December 20, 2001, showed borderline cardiomegaly and the absence of active pulmonary disease. Tr. 173. A CT scan of Plaintiff's head on January 9, 2002 was normal. Tr. 172.

Plaintiff was treated by Dr. Mark Netherton, an anesthesiologist at Carolina Spine Institute, from January to August 9, 2002. On January 15, 2002, Plaintiff complained that she continued to have low back pain without significant radiation, occasional hip pain, and lower extremity burning at night. She also reported that the radiation of pain into her lower extremities resolved after her surgery; moving too much and standing and sitting for prolonged periods increased her pain; and medication for muscle spasms relieved her symptoms moderately well. Dr. Netherton noted that Plaintiff was able to stand without difficulty and walk without assistive devices, but

6

stooped slightly forward for back pain relief. She had negative bilateral seated straight leg lifting to ninety degrees. Plaintiff also had 5/5 strength with dorsiflexion and planter flexion in her feet, and 5/5 strength with flexion and extension at her knees. It was noted that Plaintiff had 1+ reflexes; normal sensation and muscle tone in her lower extremities, and did not have atrophy in any of her extremity musculature. Dr. Netherton diagnosed myofascial type pain without a radicular component. Tr. 231-232.

On March 12, 2002, Plaintiff reported to Dr. Netherton that she continued to have low back pain, but denied any radicular component to the pain. She stated that her medications reasonably controlled her pain, and that she tried to stay active. Plaintiff was able to ambulate throughout the clinic without difficulty. Dr. Netherton noted that Plaintiff had axial spine and hip tenderness, she had pain upon flexion at the waist, and had L4-5 distribution with straight leg lift at greater than 75 degrees. Tr. 229. On June 24, 2002, Plaintiff requested medication refills and Dr. Netherton noted no significant changes since her previous visit. Tr. 227. On August 9, 2002, Plaintiff complained of low back pain and radicular pain in her lower extremity not relieved by her medication. Dr. Netherton found that Plaintiff had an antalgic gait and slightly forward stoop. She had pain on flexion and extension at the waist with positive bilateral straight leg at greater than forty-five degrees. Dr. Netherton recommended that Plaintiff have another lumbar MRI and gave her a prescription for physical therapy and strength and range of motion exercises. Tr. 226.

On August 22, 2002, Plaintiff underwent a lumbar MRI. She had relative osseous alignment of her lumbar vertebral bodies with maintained vertebral height. There were mild degenerative end plate changes surrounding the L4-L5 and L5-S1 levels with small anterior diffuse disc bulges. Tr. 223. At L4-L5, it was noted that there was minimal enhancing epidural fibrosis

7

without significant spinal canal stenosis or neuroforaminal narrowing and the absence of recurrent focal disc herniation. At L5-S1, there was mild disc dessication with moderate right paracentral diffuse disc bulge, with moderate anterior epidural fibrosis partially encasing the right S1 nerve root, causing mild to moderate canal stenosis. Tr. 223.

After the time of the ALJ's decision, Plaintiff submitted records from Dr. Hugh S. Thompson, an anesthesiologist who treated Plaintiff from January 22 to August 7, 2003. Tr. 268-298. On January 22, 2003, Dr. Thompson assessed that Plaintiff had post lumbosacral fusion at L4/5 and S1, transitional S1 vertebra, and persistent S1 radiculopathy. He prescribed pain medication. Dr. Thompson performed a series of iliolumbar and epidural steroid injections between January 28 and March 25, 2003. Tr. 268-298.

The ALJ's decision is also supported by the opinions of the State agency physicians who reviewed Plaintiff's medical records and completed physical residual functional capacity ("RFC") assessments. 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency … [physicians]… regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). On May 6, 2002, Dr. William H. Cain, a State agency medical consultant, completed a physical RFC assessment based on a review of Plaintiff's medical records. Tr. 195-203. He found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand for six hours and sit for six hours in an eight-hour workday, and push and pull within her lifting capacity. Tr. 196. He opined that Plaintiff could occasionally climb ramps, stairs and ladder; could never climb ropes or scaffolds; and could occasionally balance, stoop, kneel, crouch, and crawl. Tr. 197. Dr. Cain also found that Plaintiff did not have any manipulative,

8

visual, communicative, or environmental limitations. Tr. 198-199. On October 14, 2002, another State agency physician completed a physical RFC assessment. Tr. 240-247. He found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand for two hours and sit for six hours in an eight-hour workday, and could only occasionally push and pull with her right lower extremity. Tr. 241. The State agency physician found that Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl; should avoid all exposure to hazards; and had no manipulative, visual, or communicative limitations. Tr. 242-244.

The ALJ's determination that Plaintiff had the severe impairment of situational depression that limited her to performing unskilled work is supported by substantial evidence. On May 24, 2002, Dr. Herbert Gorod, a State agency psychiatrist, completed a psychiatric review technique form based on review of Plaintiff's medical records. Tr. 209-222. Dr. Gorod found that although Plaintiff had mild depression and mild anxiety, she did not have a severe mental impairment. Tr. 209, 212, 214. He found that, at most, Plaintiff experienced mild restrictions in her activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and she had not experienced any episodes of decompensation. Tr. 219. On October 15, 2002, Dr. Donald W. Hinnant, a State agency psychologist, affirmed the May 24, 2002 findings of Dr. Gorod. Tr. 209.

    B.    <u>Treating Physician</u>

Plaintiff alleges that the ALJ erred in disregarding the opinion of her treating physician, Dr. Poletti, that she was disabled. On February 15, 2002, Dr. Poletti opined:

> I have followed Ms Kirby for problems in her neck and low back. Her neck problem may be something that progresses to a point where it requires surgery in the future. She has significant pain into her back, legs, neck, and

> arms. It is my opinion to a reasonable degree of medical certainty that these problems may result in surgical intervention in the future and are totally disabling at this point.

Tr. 180, 230. The Commissioner contends that the ALJ properly rejected this opinion because it was inconsistent with Dr. Poletti's own findings and other evidence in the record.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

The ALJ's decision to discount Dr. Poletti's opinion of disability is supported by substantial evidence. Dr. Poletti found in September and October 2001 that Plaintiff's fusion was very solidly incorporated and her fusion mass was well-healed. Tr. 234-235. In December 2001, Dr. Poletti noted that Plaintiff's interbody bone looked very good. Tr. 233. In March 2002, just one month after Dr. Poletti's opinion that Plaintiff might require future surgery and was disabled, he opined that he did not think Plaintiff should consider surgical intervention. Dr. Poletti noted that Plaintiff had a solidly healed fusion, improved pain, and her x-rays "looked good". He recommended observation for four to six months. Tr. 228. In September 2002, Dr. Poletti noted that Plaintiff's x-rays looked very good. Tr. 225.

The ALJ's decision is also supported by the findings of other physicians. In November 2001, Dr. Colfer noted that Plaintiff had full strength and normal gait. Tr. 159. One month prior to Dr. Poletti's opinion of disability, Dr. Netherton noted that Plaintiff was able to sit, stand, and walk without difficulty; had seated negative bilateral straight leg raise testing to ninety degrees; full strength in her feet and knees; normal sensation and muscle tone in her lower extremities; and the absence of atrophy of any of her extremity musculature. Tr. 232. In March 2002, approximately one month after Dr. Poletti's opinion of disability, Dr. Netherton observed that Plaintiff could ambulate through the clinic without difficulty. The ALJ's opinion is also supported by the assessments of the State agency physicians who found that Plaintiff could perform a wide range of light work. Tr. 195-203, 240-247. Additionally, an ALJ is not bound by a conclusory opinion of disability or entitlement to benefits, even when rendered by a treating physician, since the issue of disability is the ultimate issue in a Social Security case and it is reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027

(10th Cir. 1994); see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)(statements that a claimant could not be gainfully employed are not medical opinions, but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner); King v. Heckler, 742 F.2d 968 (6th Cir. 1984); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir.1984).

### C.     Credibility/Medications

Plaintiff alleges that the ALJ erred in evaluating her credibility and by failing to take into account the side effects of her medications. The Commissioner argues that the ALJ properly found that Plaintiff's subjective complaints were not fully credible and he properly considered Plaintiff's complaints of medication side effects and found that they were not fully credible.

In assessing credibility and complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ properly considered the medical and non-medical evidence in making his credibility determination. As discussed above, the ALJ's decision is supported by the medical record. The ALJ's decision is also supported by Plaintiff's activities of daily living. She testified that she drove a car, went grocery shopping, tried to do a little housework, and washed and folded clothes. Tr. 310, 322, 328-329. Contrary to Plaintiff's testimony, there are few indications in the medical record that Plaintiff complained of side effects from these medications. As noted by the ALJ, Plaintiff complained to Dr. O'Conner about feeling groggy and being unable to focus in March[2] 2003 (Tr. 17, 186). Dr. O'Conner, however, decreased Plaintiff's Clonazepam (Tr. 186) and there were no further indications in the medical records that Plaintiff complained to medical providers of the medication side effects of inability to concentrate or drowsiness. Plaintiff's testimony also conflicts with her initial disability report, completed in March 2002, in which she reported no side effects from her pain or other medications. Tr. 57.

D.     Hypothetical to VE

Plaintiff appears to argue that the ALJ erred in not accepting the VE's testimony in response to questioning by Plaintiff's counsel. The Commissioner argues that the ALJ posed a proper hypothetical to the VE.

In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.

---

[2]The ALJ incorrectly notes that this was on February 13, 2002, instead of March 13, 2002, but cites to the correct exhibit.

13

1989). The questions, however, need only reflect those impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

Here, the ALJ asked the VE to consider a claimant of Plaintiff's age and education who was limited to light, unskilled work with the additional limitations of no crawling, climbing, squatting, or kneeling; no use of her legs or feet for pushing or pulling leg or foot controls; and the option of sitting and standing. In response, the VE identified a significant number of jobs that such a claimant could perform including that of storage facility clerk, carton packer, and parking lot attendant. Tr. 330-331.

Plaintiff's counsel asked the VE to consider a claimant who is in considerable pain throughout the day; who is required to take at least three different types of medications, one of which she required to take between three and six times per day; and that her medication makes her drowsy and affects her level on concentration. In response, the VE testified that these restrictions would eliminate all three of the jobs identified. Tr. 333-334. The ALJ was not required to include the restrictions requested by Plaintiff's counsel because the ALJ found that these restrictions were not supported by the record, as discussed above. See Lee v. Sullivan, 945 F.2d 689, 698-94 (4th Cir. 1991)(noting that a requirement introduced by claimant's counsel in a question to the VE "was not sustained by the evidence, and the vocational expert's testimony in response to th e question was without support in the record."); Chrupcala, supra.

E.      Appeals Council

Plaintiff alleges that the ALJ erred in not considering an unsigned vocational and psychological evaluation dated September 4, 2003, presumably from Dr. Vander Kolk, a psychologist. Dr. Kolk opined that Plaintiff was totally vocationally disabled due to surgery, back

pain, extreme limitation in physical activities, depression, anxiety, memory problems, poor concentration, fatigue, low stamina, and inability to persist at work tasks.  Attachment 4 to Plaintiff's Brief.  The Commissioner argues that the Appeals Council properly considered evidence submitted after the Commissioner's final decision.

Contrary to Plaintiff's argument, the Appeals Council did consider Dr. Kolk's report.  In a letter to Plaintiff's attorney in October 2004, the Appals Council indicated that it had reviewed Dr. Kolk's unsigned report, and did not find that it provided a basis for changing the ALJ's decision.  Exhibit A to Commissioner's Brief.

The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision."  Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991).  Evidence is new if it is not duplicative or cumulative.  Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990).  Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.  See Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985).

Dr. Kolk's unsigned opinion was not new, because it was duplicative in that the one time examination   merely summarized Plaintiff's work history; accident history; and subjective complaints of pain, depression, and limitations of her abilities to sit, stand, and bend.  The report is not material because it did not address any symptoms or impairments that the ALJ had not already discussed.  Further, Dr. Kolk's opinion is not supported by the medical evidence of record.  The report does not appear to be related to the relevant time period as it was after the date of the ALJ's decision and approximately nine months after Plaintiff's last date insured.  See 20 C.F.R.

15

§ 404.970 (the Appeals Council shall only consider new and material evidence when it relates to a period on or before the ALJ's decision).

  F.  <u>New Evidence</u>

  Plaintiff attached a partial emergency room record from Tuomey Hospital on September 23, 2004. Plaintiff appears to argue that this record indicates that her mental impairment is more limiting than substantiated by the medical information contained in the record because it shows that she intentionally overdosed on Dilaudid and Percocet on September 23, 2004. She also appears to argue that this action should be remanded to consider this new evidence. The Commissioner contends that this record does not warrant remand under sentence six of 42 U.S.C. § 405(g) because the evidence is not relevant and would not have reasonably changed the Commissioner's decision.

  Plaintiff fails to show that this new evidence should be considered by this Court. "Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the [Commissioner's] decision is supported by substantial evidence." <u>Huckabee v. Richardson</u>, 468 F.2d 1380, 1381 (4th Cir. 1972); <u>see also</u> 42 U.S.C. § 405(g). The evidence submitted with Plaintiff's brief is not part of the administrative record. Thus, the Commissioner's decision should not be reversed based on this evidence because it is not part of the administrative record.

  Additionally, Plaintiff fails to show that this action should be remanded to the Commissioner to consider the new evidence. Additional evidence must meet four prerequisites before a reviewing court may remand the case to the Commissioner on the basis of newly discovered evidence. These prerequisites are as follows:

16

> 1. The evidence must be **relevant** to the determination of disability at the time the application was first filed and not merely cumulative.
>
> 2. The evidence must be **material** to the extent that the Commissioner's decision might reasonably have been different had the new evidence been presented.
>
> 3. There must be **good cause** for the claimant's failure to submit the evidence.
>
> 4. The claimant must present to the remanding court at least a **general showing** of the nature of the new evidence.

Borders v. Heckler, 777 F.2d 954 (4th Cir. 1985)(emphasis added).[3]  Plaintiff has not shown that this September 2004 record, for medical treatment that occurred more than a year and one half after the expiration of her insured status (on December 31, 2002), is "relevant".  A claimant must establish that the evidence was "relevant to the determination of disability at the time the application was first filed and not merely cumulative."  Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983).   This record is not relevant as it does not relate to the period on or before the ALJ's decision (although it may be useful for a new disability application). See 20 C.F.R.

---

[3]The court in Wilkins v. Secretary of Dep't of Health & Human Serv., 925 F.2d 769 (4th Cir.1991), rev'd on other grounds, 953 F.2d 93 (en banc), suggested that the more stringent Borders four-part inquiry is superseded by the standard in 42 U.S.C. 405(g). Id. at 774; see Wilkins, 953 F.2d at 96 n. 3.  The standard in 42 U.S.C. § 405(g) allows for remand where "there is new evidence which is material and … there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  However, Borders has not been expressly overruled.  Further, the Supreme Court of the United States has not suggested that the Borders construction of 42 U.S.C. § 405(g) is incorrect.  See Sullivan v. Finkelstein, 496 U.S. 617, 626 n. 6 (1990). Thus, the more stringent Borders test should be applied.  Even if the less stringent test is applied, Plaintiff fails to show that this case should be remanded because he fails to show that the new evidence is "material".

§§ 404.976(b)(1), 416.1476(b)(1).  Further, Plaintiff has not shown that this record is material as it does not provide information concerning her condition at the time relevant to the ALJ's decision.

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence.  This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra.  Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion.  Shively v. Heckler, supra.  It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

s/Joseph R.  McCrorey
United States Magistrate Judge

February 9, 2006
Columbia, South Carolina